AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

V.

GRANTLY EARL CALVIN and
AYLAIR BEVERLY SPENCE

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 00-4049-SNOW

FILED by ___ D.C.
MAR 6 2000
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. In or about July 1996 to April 5, 1997 in Miami-Dade and Broward county, in the SOUTHERN District of FLORIDA defendant(s) did, (Track Statutory Language of Offense)

knowingly and intentionally possess with intent to distribute a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of cocaine; and did knowingly and intentionally combine, conspire, confederate and agree with persons known and unknown to possess with intent to distribute a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of cocaine.

in violation of Title 21 United States Code, Section(s) 841(a)(1) and 846.

I further state that I am a(n) Special Agent, FBI and that this complaint is based on the following
Official Title

facts:

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

Cassandra E. Joseph
Federal Bureau of Investigation
Signature of Complainant

Sworn to before me and subscribed in my presence,

March 6, 2000                    at    Fort Lauderdale, FL
Date                                         City and State

LURANA SNOW
UNITED STATES MAGISTRATE JUDGE              Lurana S. Snow
Name & Title of Judicial Officer             Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Cassandra E. Joseph, Special Agent (S/A) with the Federal Bureau of Investigation (FBI), Miami, Florida, being first duly sworn, state the following:

1.   I am a Special Agent with the Federal Bureau of Investigation (FBI), assigned to the Miami Field Division. I have been employed by the FBI, as a Special Agent, for approximately eleven (11) years. During that time I have specialized in the investigation of drug offenses and property crimes. I have received specialized training in the investigation of narcotics trafficking and have been involved in the investigation of drug possession, manufacture, distribution and importation, as well as the methods used to finance drug transactions and to launder drug proceeds.

2.   This affidavit is based upon information personally known to me and information which has been provided to me by other law enforcement officers. The purpose of this affidavit is to provide probable cause for the issuance of a criminal complaint and arrest warrant with respect to GRANTLY EARL CALVIN and his common-law-wife, AYLAIR BEVERLY SPENCE. CALVIN and SPENCE are alleged to have violated Title 21, United States Code, Sections 841(a)(1), 846, and Title 18, United States Code, Section 2. The facts outlined in this affidavit are based upon an investigation conducted by your affiant and other law enforcement officers.

3.   In July 1996, Kenneth B. Ivy, S/A, FBI, received information from a confidential source (CS) that GRANTLY EARL CALVIN has been engaged in a conspiracy to possess and distribute cocaine hydrochloride, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

4.   Between July 1996 and March 1997, Special Agent Kenneth B. Ivy obtained subscriber information, telephone toll records, and other identifying information concerning GRANTLY EARL CALVIN, AYLAIR BEVERLY SPENCE and others engaged in the aforementioned conspiracy.

5.   In or about November 1996, the confidential source placed the first of a series of consentually monitored and recorded telephone calls to GRANTLY EARL CALVIN's cellular telephone number (305) 965-7147. Pertinent calls are identified as follows:

   A.   On March 5, 1997, the CS placed a consentually recorded and monitored telephone call to GRANTLY EARL CALVIN in an attempt to obtain a kilogram of cocaine. During the telephone conversation, the cocaine was referred to as a "pair of shoes." CALVIN advised the CS that things were really dry and that the drugs he had were

1

for his personal use and routine customers. CALVIN advised the source to "shop at another store." The CS responded that he was extremely comfortable with CALVIN and did not want to deal with anyone else. CALVIN advised the CS to contact him the following day.

        B.      On March 6, 1997, the CS placed a series of consentually recorded and monitored telephone calls to CALVIN's residence. During the third telephone call, CALVIN advised the CS "the city is still dry," bigger people than you have problems, "no one has anything." CALVIN further advised the CS that as soon as he heard from his supplier, he would contact the CS.

        C.      On March 16, 1997, the CS placed a consentually recorded and monitored telephone call to CALVIN. CALVIN advised the CS that he had not heard from him in a week. The CS asked CALVIN if everything was all right. CALVIN replied "Supposed to be." The CS asked CALVIN "What was the number?" CALVIN replied "17.5" [referring to the $17,500 purchase price for one kilogram of cocaine].

        D.      On March 27, 1997, the CS placed a consentually recorded and monitored telephone call to CALVIN. The CS asked CALVIN if CALVIN was in a position to take care of the CS. CALVIN advised the CS that no one would take care of the CS until Monday, and that CALVIN would not do any business until after the Easter weekend. The CS advised CALVIN that he would contact CALVIN on Monday.

        E.      On March 31, 1997, the CS placed a consentually recorded and monitored telephone call to CALVIN. CALVIN advised the CS that CALVIN has not heard anything from his supplier. The CS asked if the price was "17.5." CALVIN advised the CS the price had gone up to $18,000 per kilogram. The CS advised CALVIN to call when he heard from his supplier. CALVIN agreed.

        F.      On April 1, 1997, the CS placed a consentually recorded and monitored telephone call to CALVIN. CALVIN advised the CS that his primary supplier was currently out of town and he has not yet met with his secondary supplier.

        G.      On April 4, 1997, the CS placed a consentually recorded and monitored telephone call to the residence of CALVIN. The CS asked CALVIN if he could provide the CS with the one kilogram of cocaine previously discussed. CALVIN stated "You need to be ready tomorrow, because I'm probably going to see my man in the morning . . . you better be ready." The CS advised CALVIN that he would be ready. CALVIN stated, "Okay, then call me this same time tomorrow."

H. On April 5, 1997, the CS placed a consentually recorded and monitored telephone call to CALVIN. CALVIN advised the CS to "carry eighteen," referring to $18,000.00 in United States Currency and to bring fifty dollars for CALVIN.

I. On April 5, 1997, the CS placed a consentually recorded and monitored telephone call to CALVIN's cellular telephone. CALVIN advised the CS that he was definitely ready for the CS. CALVIN advised the CS to bring $18,000 for the kilogram of cocaine and to include $50 for him. CALVIN advised the CS that he was only making a $50 profit on the deal.

6. On April 5, 1997, the CS responded to CALVIN's residence, 3411 Kapot Terrace, Miramar, Florida and gave CALVIN $18,000 in United States Currency. CALVIN took the CS to a bathroom where they counted the money. After the money was counted CALVIN instructed his common-law-wife, AYLAIR BEVERLY SPENCE, to go and pick up a "thing" [referring to one kilogram of cocaine]. S/A IVAN RODRIGUEZ conducted surveillance and observed a four-door, green, Honda Accord, bearing University of Miami Florida tag H60MB, traveling eastbound on Miramar Parkway. The car made a right turn into the Miramar Club Condominium complex and parked in the space numbered 18. AYLAIR BEVERLY SPENCE exited the vehicle and walked toward an apartment unit.

7. S/A RODRIGUEZ observed AYLAIR BEVERLY SPENCE return to the green Honda Accord with a brown package. SPENCE traveled west on Miramar Parkway, and turned left onto Ivy Lane, where she was observed by Broward Sheriff Office Detective RICKY CLARK and Hollywood Police Detective DANZELL BROOKS, as she parked the car adjacent to a second vehicle operated by GRANTLY EARL CALVIN. CALVIN was driving a black Honda Accord bearing University of Miami Florida tag H35DJ.

8 As CALVIN and SPENCE sat in their vehicles, adjacent to each another, Detectives CLARK and BROOKS observed SPENCE hand CALVIN a brown package. CALVIN handed SPENCE with a package in return. Your affiant believes CALVIN provided SPENCE with the $18,000 in undercover funds which were used as payment for the kilogram of cocaine.

9. Several minutes later, CALVIN and SPENCE's return, in their vehicles, to 3411 Kapot Terrace, Miramar, Florida. CALVIN and SPENCE entered the residence through the garage door, where CALVIN met the CS. CALVIN cut open the package and displayed the cocaine to the CS and then handed the kilogram of cocaine to the CS.

10. After a brief conversation with CALVIN, the CS exited the residence and traveled to a prearranged location where the CS gave the kilogram of cocaine to S/A

Kenneth B. Ivy. The cocaine field tested positive as cocaine hydrochloride. The cocaine was transported to the Miami Field Division Office and is retained as evidence.

Based upon the foregoing information, your affiant believes that probable cause exists for the issuance of a complaint and an arrest warrant charging GRANTLY EARL CALVIN and AYLAIR BEVERLY SPENCE with violations of Title 21, United States Code, Sections 846 and 841(a)(1).

FURTHER AFFIANT SAYETH NAUGHT

_____
CASSANDRA E. JOSEPH
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to before me this 6th day of March 2000.

_____
LURANA SNOW
UNITED STATES MAGISTRATE JUDGE